Ex parte ROACH.

(District Court, N. D. Alabama, M. D.   August 14, 1917.)

*(Syllabus by the Court.)*

1. ARMY AND NAVY ☞22—ENLISTMENT—EXPIRATION.
    Under the provisions of the National Defense Act June 3, 1916, c. 134. 39 Stat. 166, upon the expiration of his enlistment an enlisted man is not automatically furloughed to the reserve.

2. ARMY AND NAVY ☞22—ENLISTED MAN—ACTS OF CAPTAIN.
    No act or acts done by a company captain, or no act or acts of the company captain and the enlisted man, without the approval of the War Department, can operate as a discharge of the enlisted man, or as a furlough to the reserve.

*(Additional Syllabus by Editorial Staff.)*

3. ARMY AND NAVY ☞24—"FURLOUGH."
    "Furlough," as a noun, means "(1) Leave of absence; esp., leave given to a soldier or, sometimes, a government official or employé, to be absent from the service for a certain time; also, the document granting the leave of absence. In the United States army furloughs are given only to enlisted men, officers being given leaves of absence. In the United States navy furlough is an extended leave of absence, or a suspension from duty by an executive order, on half leave-of-absence pay, given only to an officer. (2) A permit or passport." As a transitive verb, it means "to grant a furlough to; broadly, to allow leave of absence to."

At Law.   Petition by Roy B. Roach for writ of habeas corpus. Writ dismissed, and petitioner remanded.

J. Q. Smith and John T. Roach, both of Birmingham, Ala., and Hill, Hill, Whiting & Stern, of Montgomery, Ala., for petitioner.

Thos. D. Samford, U. S. Atty., of Opelika, Ala., and Lieut. J. M. Strassburger, of Montgomery, Ala., for the United States.

HENRY D. CLAYTON, District Judge.   The petition for the writ of habeas corpus in this case presents for determination the question whether or not Roy B. Roach, who is detained for safe-keeping as a prisoner by the sheriff of Montgomery county under direction of the military authorities of the United States, is unlawfully restrained of his liberty under or by color of the authority of the United States. The question is answered by the ascertainment of the legal status of Roach, the petitioner, on July 29, 1917. If, as a matter of law, he was then in the active military service of the United States, his detention is legal. But if at that time he had been duly furloughed to the National Guard Reserve, as contemplated under sections 69 and 78 of the act approved June 3, 1916 (Comp. St. 1916, §§ 3044h, 3044p), and commonly called the National Defense Act, he is now restrained of his liberty illegally and should be discharged.

After a careful consideration of the evidence in this case, both oral and documentary, the court finds the facts necessary to the determination of the question to be as follows: That on April 24, 1914, Roy B. Roach enlisted in Company B, 2d Infantry, Alabama National Guard, for the period of three years. He was still serving with his

command when on June 29, 1916, he subscribed and swore to a federal enlistment contract, containing the following provisions prescribed by section 70 of the National Defense Act of June 3, 1916 (Comp. St. 1916, § 3044i):

"Form No. 14, A. G. O.

"Oath and Contract of Enlistment of Roy B. Roach, Co. C, 2d Infantry, A. N. G., in the National Guard of the United States and of the state of Alabama: I do hereby acknowledge to have voluntarily enlisted this 29th day of June, 1916, as a soldier in the National Guard of the United States and of the State of Alabama for the period of three years in service and three years in the reserve, under the conditions prescribed by law, unless sooner discharged by proper authority. And I do solemnly swear that I will bear true faith and allegiance to the United States of America and to the state of Alabama, and that I will serve them honestly and faithfully against all their enemies whomsoever, and that I will obey the orders of the President of the United States and the Governor of the state of Alabama, and of the officers appointed over me according to law and the rules and articles of war. This oath is subscribed with the understanding that credit will be given in the execution of this contract for the period which I have already served under my current enlistment in the organized militia of the state of Alabama.

"Signature,                     Date of Current Enlistment in Organized Militia,
  "Roy B. Roach.                           April 24, 1914.

"Subscribed and duly sworn to before me this 29 day of June, A. D. 1916, Virgil T. Roach, 1st Lt. 2nd Infantry, A. N. G."

On July 1, 1916, while at the mobolization camp of the Alabama National Guard at Montgomery, petitioner and the company of which he was then a member, Company C, were mustered into the service of the United States.

On or shortly before April 24, 1917, when petitioner's three years' enlistment in service expired, he requested to be furloughed to the National Guard Reserve, and papers seeking to do this were forwarded to the proper military authorities at Montgomery. The papers were returned on account of some error. Petitioner then told his company commander that he desired to continue in the active service during the whole of his enlistment period, as he could do under section 69 of the National Defense Act (act approved June 3, 1916). Petitioner continued to do guard duty, to perform other military duties, and to draw pay during all of said time and until on or about June 22, 1917, when his company commander again addressed a communication to the commanding officer of the 2d Alabama Infantry, stating that, "enlistment of private Roy B. Roach having expired, request that he be furloughed to reserve." This communication was accompanied by petitioner's final statement and reservist's descriptive card, all of which were transmitted, through proper military channels, to the headquarters of the United States Army for the Southeastern Department for approval. It will be noted that this request for petitioner's furlough to the reserve was not made until after the act approved May 18, 1917, authorizing "the President to increase temporarily the military establishment of the United States," became effective.

While awaiting action by the Southeastern Department on petitioner's application for furlough, his company commander permitted him to deliver and surrender to the proper military authorities all gov-

ernment property in his possession; gave him transportation to his home, and petitioner was instructed by his company captain to go there and await receipt of the papers evidencing his furlough to the reserve. Petitioner returned to his home, his name was dropped from the rolls of the company, and omitted from the "Morning Report of Co. C," and the following notation was made on page 14 of the company pay roll, dated at Birmingham, Ala., June 30, 1917: "Roach, Roy B.  *  *  *  Furloughed to National Guard Reserve, active term of enlistment having expired. Held in service until date of furlough for convenience of government. Furloughed June 22, 1917."

On July 26, 1917, petitioner's request for furlough to the reserve was returned to the military authorities at Montgomery, from the headquarters of the Southeastern Department, disapproved, and with the information that petitioner could not under the law be furloughed to the reserve "during the present emergency."

A few days thereafter, and on July 29, 1917, and prior to August 5, 1917, the date when, by the President's proclamation of July 3, 1917, the National Guard Reserves were to be called into the military service of the United States, First Lieutenant Cowan, an officer of petitioner's company, acting under direction of petitioner's company commander, met private Roach in Birmingham, Ala., told him his application for furlough had been turned down, and ordered him to report back to his company for service. This petitioner declined to do, and was placed under arrest by Lieutenant Cowan following an altercation and encounter, the details of which it is not necessary to recite.

Petitioner was later brought to Montgomery under arrest, and placed in the Montgomery county jail for safe-keeping pending his trial by military authorities on the charge of striking a superior officer. Petitioner insists that on July 29, 1917, "he was a civilian and not a soldier in the contemplation of the laws of the United States, and was not subject to military law or authority."

The return of the sheriff to the writ showed that he was holding petitioner as stated above.

Counsel for petitioner insist that when on or about April 24, 1917, he requested to be furloughed to the reserve, and when later he surrendered the government property in his possession, his name was dropped from the company rolls, he was furnished transportation to his home and went there, petitioner's active military service ceased, and that he became, by operation of law, a member of the National Guard Reserve; that no approval of petitioner's application for furlough by authorities superior to petitioner's company commander was requisite; and that the issuance to petitioner of a reservist's descriptive card and a final statement were unnecessary to fix petitioner's status as a reservist. In short, that, under the facts of this case, the enlisted man Roach was automatically furloughed to the reserve.

[1] (1) The court cannot agree to this contention. Until the proper military authority had settled the accounts of the enlisted man, and had ascertained, among other things, whether the enlisted man would be required to make up any unauthorized absences, had made up

his final statement,. and that there had been delivered to him a reservist's descriptive card, the evidence of the soldier's furlough to .such reserve, it.could not be said that the soldier had been furloughed to the reserve.

[3] Of course, it must be assumed that Congress selected the particular phraseology, "furloughed to the * * * reserve," employed in section 29 of the National Defense Act (Comp. St. 1916, § 1894), with knowledge that the term "furlough" is well defined by the lexicographers, and that its meaning is generally understood by the practical application made by the War Department. As a noun, it means: "(1) Leave of absence; esp., leave given to a soldier, or, sometimes, a government official or employé, to be absent from the service for a certain time; also, the document granting the leave of absence. In the United States army furloughs are given only to enlisted men, officers being given leaves of absence. In the United States navy furlough is an extended leave of absence, or a suspension from duty by an executive order, òn half leave-of-absence pay, given only to an officer. (2) A permit or passport." As a transitive verb, and as such it is used in the National Defense Act, it means "to grant a furlough to; broadly, to allow leave of absence to." "Furlough," Webster's New International Dictionary, p. 878. So it is apparent that Congress had in contemplation that to be furloughed to the reserve meant to grant to the enlisted man a leave of absence until the enlisted man should be called into the service again by presidential proclamation, under section 111 of the National Defense Act, approved June 3, 1916 (Comp. St. 1916, § 3045), or under the act approved May 18, 1917, § 1, cl. 2. And, manifestly, it was contemplated that the practice and requirements of the War Department should be observed as a prerequisite to the furlough of the soldier to the reserve. In this case the soldier, petitioner Roach, was never furloughed to the reserve. In fact, his application to be furloughed was denied by competent military authority.

[2] (2) It is next contended for petitioner that when, following his request, petitioner's company commander allowed him to surrender the government property in his possession, gave him transportation to Birmingham, dropped his name from the rolls of the company, and made the notation of furlough on the company records, that such action of the company captain operated to furlough petitioner to the reserve. However, there is no merit in this contention of petitioner. The actions of his company captain, made without authority from his superior officers, were not binding upon the military establishment and the military authorities, and the captain had no authority to render valid or sufficient any acts of petitioner looking to the termination of his active service.

It will be remembered that when petitioner's first papers for furlough were returned on account of an error, that petitioner then told his captain that he desired to continue in active service, as he had the right to do under section 69 of the National Defense Act of June 3, 1916, and there is no requirement that this election be made in any particular form or manner.

While petitioner was in the active military service of the United States, and before the attempted furlough of petitioner to the reserve on June 22, 1917, as stated above, and while petitioner's enlistment was in force and he was performing military duties and receiving pay as a soldier, Congress passed the "Act to authorize the President to increase temporarily the military establishment of the United States," and said act became effective by the approval of the President on May 18, 1917. Paragraph 7 of said act contains the following provision:

"All enlistments, including those in the regular army reserve, which are in force on the date of the approval of this act and which would terminate during the emergency shall continue in force during the emergency unless sooner discharged."

Petitioner's enlistment falls within the purview of this act. He was not entitled to a discharge, and the military authorities were correct in holding that he could not be furloughed to the reserve during the present emergency, for the paragraph quoted above prohibited his furlough.

The court is of opinion, therefore, that on July 29, 1917, petitioner, Roy B. Roach, had not the status of a civilian or a reservist, but that he was in the actual military service of the United States and subject to military law and discipline. Accordingly, the application of petitioner for discharge from custody is denied, his petition for the writ of habeas corpus dismissed, and he is remanded to the custody of the military authorities; and the order to that effect will be entered.

### ORDER.

Upon consideration of the petition of Roy B. Roach for habeas corpus, praying that he be discharged from custody, the return of the sheriff, the evidence, both oral and documentary, and after considering the argument and briefs of counsel for petitioner and the officers detaining him, the court is of opinion that petitioner is not unlawfully restrained of his liberty. It is therefore ordered, adjudged, and decreed by the court that said Roy B. Roach be, and he is hereby, remanded to the custody of the United States military authorities, and that his petition for discharge on habeas corpus be, and it is hereby, denied and dismissed.